Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. We have five matters on the docket today, three of which have been submitted. We'll begin by submitting those officially. The first is United States versus Patterson. The second is United States versus Lizola. And the third is Warden versus Miranda. We have two cases for argument today. We have a little bit of an unusual arrangement. For those in the audience, you'll have to look over at the screen. When we first had this scheduled, there was a shutdown in effect. And the government concluded that it couldn't get here. So we made an arrangement so he could appear, counsel for the government, could appear by video. And so we're continuing with that today. When it's the government's turn, they'll appear by video. So counsel, if you're ready to begin, please proceed. Thank you. May it please the court. My name is Andrew Sterling. I represent the petitioner Esteban Tiznada-Reyna. I'd like to reserve three minutes for rebuttal, please. We'll try to help. Could you hold that mic up a little closer to you and speak right up? Thank you, Your Honors. This case asks the court to pick up where it left off in its en banc decision in Mondaca-Vega. We're asking the court to further clarify the three-step burden of proof framework that applies in deportation proceedings and Article III review of final orders of removal. Counsel, do you concede that under ANALA-VIA-NOEVA that there is a presumption of alienage in this case? We do, though we wouldn't cite to that case, yes, Your Honor. And what case would you cite? That's a good question. I've done a comprehensive review of the case law. I can't find a single case that identifies the need for a presumption. But I understand why it would arise, because we have a foreign-born individual, and we do agree that the presumption arises in this case. OK, very well. Mondaca-Vega, and that would be step one of three steps. Mondaca-Vega focused on step three, which is the ultimate burden of persuasion that rests on the government per Supreme Court precedent in would-be versus INS. As I take it, your argument is that step two describes a burden of production rather than persuasion. Precisely, Your Honor, and I think that's a critical distinction. And unfortunately, the term burden of proof is quite slippery, because it tends to refer both to production, or can refer to production, and also persuasion. Here's a question I'd like you to answer about that. In order for us to get into these 1252 proceedings at all, some panel of the Ninth Circuit has to determine that there is a question of fact, correct? Correct, Your Honor. Which is to say that it's not a summary judgment case. Correct, Your Honor. Wouldn't it be strange to then have a procedure in front of a district judge in which she was able to grant summary judgment because somebody didn't meet their burden of production? As I've reviewed the- Or directed verdict, because someone didn't meet their burden of production. We've already decided there's a fact issue to be resolved. Yes, Your Honor, I agree. So we have a statute with 1252, which says if there's no disputed issue of fact, the circuit court will decide it summarily. And if there is, it transfers it to the district court. Right, so some panel, not the three of us, already decided in this case that there was a disputed issue of fact. Correct, and that fact issue would be the citizenship claim. And more specifically, the one fact question is, where was my client's father born in the early 1920s? Right, and as you read the- I think it was written poorly. I know the guy who wrote it, and maybe he didn't do a good job. But your argument is that at step two, the judge, in effect, would be free to say, you haven't produced any evidence, and therefore, I'm going to grant a directed verdict. And if that were the case, wouldn't the panel have not sent it back? Not sent it? It's already looked at that summary judgment sort of analysis at the beginning. Yes, Your Honor, and again, I've not found any specific analysis on the relationship between the court of appeals and the district court. But it does seem, I know in the case of Olivas versus Salazar, it seemed that the circuit court took the position that we need to allow the district courts to handle fact issues, and that's kind of the way it worked. I mean, I agree. In my opinion, having reviewed it, it seems like it's an unfleshed out relationship. Well, that's why I'm- doesn't it make much more sense to view step two as a burden of persuasion? We use the word credible. We wouldn't use the word credible if we were talking about a burden of production. Correct, and that, I think, goes directly back to Mondaca-Vega, where we're looking at the adjective unequivocal and figuring out if that actually means something, or if it's just sort of a word that slipped in there without probably where it shouldn't have. Now, and you're correct, the word credible, and we've cited case law, when, by definition, across the board, when a court is engaging in a credibility analysis, we're moving into the realm of persuasion. Can I- since we're talking about credibility here, I want to find out, as you know, the petitioner applied for a certificate of citizenship in 1980 and then sought to reopen that same denied claim two additional times. On each occasion, the trier of fact considered the evidence presented, much of which has also been presented in this case, and concluded that based upon, among other things, there were three birth certificates, at least one, probably two of which had the date or the place of birth written in. It was falsified, in other words. What preclusive effect, if any, does that prior determination by the trier of fact on the citizenship certificate have in this case? None, Your Honor, because this is a de novo review of the Article II proceeding, and so the immigration judge and the BIA is entitled to zero deference. However, Your Honor, I will speak to that point because it obviously is there. I'm not a forensic guy. I mean, I think I understand what the immigration judge was saying. The judge did note that if it was an issue, it would have been action engaged in by my client's father, who is long deceased. Right. It still bears, does it not, on whether or not he was born in the United States. And after all, as you conceded, that's really the issue before us. You've got a presumption of alien interest. If that's not rebutted, your client loses, arguably. So you need to show that there's evidence that his father was born in the United States. And this is one of the elements of proof that was presented at an earlier point and also reconsidered by the IJ in this case, correct? Correct, Your Honor. And we believe that on de novo review, that's something that the capable fellows at the DOJ will bring to the court's attention in terms of whether they can meet their ultimate burden of persuasion. Again, we- But they did bring it to the court's attention. Correct, and so our issue is on the burden of proof analysis. The problem was that it was used by the district court to find that we hadn't burst a presumption that a- Because she didn't find the evidence that you presented of not your client's native birth, but his father's native birth credible. Correct. So let me ask this question differently. If you're wrong about the burdens, if in fact the second step of Mondaca-Vega is a burden of persuasion, do you lose? In this case, we did. I know you did lose. I'm sorry, do you lose in front of us? And that's kind of why we come back to that fundamental value determination that the Supreme Court made and would be. Well, no, but can you answer my question? Yes, Your Honor. On that, you know, so it's a 51% preponderance of the evidence standard. We're looking at a, you know, I believe whoever- Frankly, in this case, I believe whoever bears the burden of persuasion is going to lose because we're looking at an event in the distant past with largely illiterate poor people out on the reservation. It's going to be impossible to prove, I believe, certainly to clear and convincing, which is the- See, the judge could have believed. Your evidence, it was certainly, you had some evidence and the judge, it was a strange case because there were very few live witnesses, one, only one live witness, but the judge could have looked at all of this evidence and said, I find this is credible and burst the presumption that arose from your client's foreign birth and therefore government, let me see, let me now figure out whether you've proved your case by clearing convincing evidence, but she didn't believe it. And so my question is, in your view, this case turns entirely under burden of proof. Correct, Your Honor. Whether it's a burden of production or a burden of persuasion. Correct, Your Honor. And also we'll say again, this court in Rose versus Sessions, I believe it's an unpublished decision, but the court said when it's referring to, previously, the only reference we've had to substantial credible evidence is, oh, it's certainly provided here, so we don't need to look at what quantum of evidence is required. In Rose versus Sessions, when they looked at that standard, and that was the 50% case where the district court said it's in precise equipoise, and what the panel did with that, they said, well, that's weird. And then they said, well, we know that substantial evidence is more than a scintilla, but less than a preponderance. That was the standard the panel used in that case. And they said, well, since the district court found a 50% likelihood. The difficulty, and even though it's unpublished, I want to address it with you. That's a standard of appellate review. In other words, that's an appellate court saying, was there substantial evidence in the record on which the district court could have based its conclusion? That's not, that's quite different than what we say to the district court in terms of burdens of persuasion or production, isn't it? It is. There's a distinction. My understanding, however, there is only one basically recognized burden of production. That's Federal Rule 301, which is the substantial evidence standard. And that's set forth in Lew versus Moss. It says, a presumption which shifts the burden of production has the sole effect of forcing the opponent of the presumption to produce enough evidence to avoid a directed verdict. But isn't the standard substantial credible evidence, not just substantial evidence? Right, and so then we have the Mondaca-Vega question. Are we looking here at a never-before-seen, I guess it would be a fourth, and this is my point, it would have to be a fourth burden of persuasion. Because by definition, if we're saying that the adjective credible has any meaning, it means that we're doing a merits-based determination. Sure, and that's what a burden of persuasion, it's a burden of persuasion where we're saying to the district judge, first of all, they gotta come forward with something. It has to be substantial. They just can't say, gee, I think I was born, my father was born in the United States. That doesn't meet the burden. And second, you have to find it credible. And that's exactly what district judges do all the time, isn't it? As a burden of persuasion. Yes. So the Mondaca-Vega test says, when the government offers evidence of foreign birth, a rebuttable presumption of alienage arises. Right. In order to burst that presumption, your client has to produce substantial, credible evidence, correct? That's what the test says, but if we interpret it to, basically what we're saying is, we need to figure out if we're gonna call it a rebuttable presumption, or if we're actually, if it gives rise to a shift in the burden of persuasion. But counsel, let's just say you're right about whether we change the standard. You still have this underlying presumption of alienage, do you not? It's just kind of like a low-level, high-tension wire just down below, because whatever we decide on that, that kind of tips the scale, unless you can come up with something that pushes it over, right? Right, and the district court found that we'd produced, again, in light of the circumstances, we're looking at a fairly document, a sparse environment with no living witnesses. What the court found is that we produced, well, enough evidence to survive a summary judgment, evidence from which a reasonable jury, on a good day- That's where you get back to what Judge Hurwitz mentioned earlier. You're past your three minutes. I don't know whether you want to save some of your time, or whatever you like. It's your case, so you tell us whether you want to proceed at this point, or you want to save time for rebuttal. I'd like to just conclude with one point, which is that the rebuttable presumption arises because foreign-born people, we can assume, may not be United States citizens. The question is, what quantum of proof should we put on that person to burst that rebuttable presumption? 301 is the only recognized standard that we know in the federal context of bursting a presumption, and that's set forth in Rule 301, and it's also, we can come up with some other cases. It's not a burden of persuasion, and again, if we do put the burden of persuasion on the petitioner, we've relieved the government of its burden of persuasion, which is a Supreme Court mandate. The government has to prove all facts supporting deportability by clear, unequivocal, which we can delete, clear and convincing evidence. If we deport this individual who has a non-frivolous claim to US citizenship, we're deporting him because we're saying he hasn't produced enough evidence to satisfy this judge. That's a veiled burden of persuasion. It's not allowed under would-be in our estimation. Thank you. Why don't you say the balance of your time, and thank you. Thank you. So now we'll hear from the government, and again, I'd call everyone who's interested attention to the screens. You can see the government there. That's the government. Hi, government. May it please the court. I just want to begin by thanking this court and opposing counsel for your understanding in a difficult circumstance to let us appear through video. I'm sure this is not ideal for anyone, but we will do the best we can with the technology that we have. May it please the court. This case involves a simple question of whether the district court properly found that the petitioner had not established his claim to US citizenship removal proceedings. And this court should uphold the district court's findings for at least two reasons. First, even applying Mendoca-Vega, the district court properly found that the petitioner failed to show that he's a US citizen. He frames his argument primarily as a legal one, as one of challenging the district court's application of the substantial credible evidence standard. But what he's really contesting in this case are the district court's factual findings. This is not a case like Rose in which the evidence was in equipoise. This is a case in which the district court made specific credibility findings about the evidence itself. It weighed the evidence and concluded that he had not met his burden of production or persuasion. In fact, in this case. Can I, I know it's difficult by video, but I want to ask you a question about that. The district court, both in pretrial proceedings and in its eventual order, described the second step as a burden of production. Did it not? Yes, your honor. Was that correct in your view? As we argue in our brief, no, we think Mendoca-Vega doesn't apply in certain cases like this. I know you think it doesn't apply. Put that argument in your pocket for a moment and hopefully don't reach in your pocket again. My question is, was the district court correct in describing the second step of Mendoca-Vega as a burden of production? I think if we were to apply Mendoca-Vega, I think it's more than, I think Rose articulates it well. So I think there's some persuasion involved. Whether it's 51% or not, I don't think that's what Mendoca-Vega meant. I think Rose makes it clear it's somewhere between a scintilla, less than a preponderance. I'm not sure you're answering my question. My question is, is the second step of Mendoca-Vega a burden of production? Because if it is a burden of production, the other side produced sufficient evidence to avoid summary judgment. Or is it a burden of persuasion under which the district court must evaluate that evidence and see whether she finds it credible? Yeah, I think there's certainly a persuasive element to it. The word credible, as you pointed out earlier, she just didn't ask it. Why are you having difficulty picking one of the two? Which, door one or door two? Which one do you want? It's one of persuasion, Your Honor. Okay. If that's your question. I think it was my question. Yeah, yeah. Now, if it is one of persuasion, how do we match that up with the notion that the government has to prove its case by clearing convincing evidence? I mean, district judges really don't move along in three steps in making findings. But when we look at this record as a whole, what's your clearing convincing evidence that this person is not a United States citizen? Your Honor, I think there are a number of things in the record. Is it the sister's birth certificate? Is that the main item? Yes, Your Honor. There are five birth certificates that were before the immigration judge, and I think the district court judge pointed out two of them. But there were at least five birth certificates in N-600 applications from this petitioner's siblings that were visibly altered. They indicated the petitioner's father was born in Mexico, has a Mexican nationality, and then it appears there was a cut-and-paste job basically inserting it as American nationality. There's a citizenship claim from the sister Adelida in 1989 to an INS officer saying that her father was of Mexican nationality. There was the fact that the petitioner, much like Mondacco, had actually been deported four times already, including one time in Chico. Is it correct, sorry for the lapse in the video and the audio here. Is it correct that the birth certificate of the petitioner's sister, Adelida Tiznado, in the government's view, is authentic? Our view is that the original one, the one that indicated Mexican nationality, is most likely authentic. That's the one that indicates, that birth certificate of the sister indicates that Jesus was born in Rancho Veracruz, Mexico, correct? Yes, your honor. Is that the item of either proof or persuasion that tipped the burden to the petitioner? I think that along with the petitioner's birth certificate that he was born in Mexico, I think those certainly create a shift toward the petitioner to kind of rebut that. We understand that this case is a very old case. The father was born in the early 1920s, but there are just enough suspicious things in this case that we point out that this is not an equipoised case. You know, the late birth certificate wasn't issued until 1976. Does the government understand that this area was a unified tribal existence long before there was an international border? Yes, your honor, we recognize that. Freedom of traffic was, across the border by members of the Tohono O'odham, was frequent? Yes, your honor. And there was no break? We understand that. We had several interesting depositions in this trial during discovery phase that informed us on what was exactly going on. I think there are a few things, again, that cut against that. So the baptismal record, the original one, the one that was actually recorded in 1924, I believe, says that the father was living in Sonora, Mexico at the time he was baptized, at the age of two. So his father was, I think, born in 1922. We have no records either in Mexico or the United States, but I mean, if that is gonna cut anyway, you look at that original baptismal record as the microfilm, that's almost 100 years old now. It says the father was living in Sonora, Mexico at the time he was baptized. Counselor? So yes, there was no... Counselor, I wanna go back for a moment to the issue of whether this is a burden of production or a burden of persuasion. The Mondaca-Vega panel, of course, was very familiar with our standard for summary judgment.  Was it not? I assume it was. If that's the case... Yes, your honor. Why didn't they say, that's the standard we're looking at here, therefore, it's a burden of production? It would have been very simple for them to say, it would clear everything up, but they didn't say that. Should we draw any conclusions from the fact that they didn't indicate that this was... That they intended that we follow the summary judgment standard? Yes, your honor. I think that is... I think we point that out in our brief as well. And I think in addition to that, I think as Judge Hurwitz pointed out, the standard for a transfer, this court doesn't transfer every case within which there's a nationality claim. The transfer happens because of the genuine issue of material fact that warrants the transfer. And so, which is very similar to the summary judgment standard. If you apply the summary judgment standard to the burden of production, or step two, I'll call it, step two of Mondaca-Vega, I think the problem there is that every case that gets remanded to a district court, if they produce something, will warrant the government proven by clear and convincing evidence the other way. Did you file... I'm sorry, again, for the delay. Did you file a summary judgment motion in this case? We did, your honor. So under your theory, that was an improper motion, was it not? No, your honor. Well, this Court of Appeals had already determined that there was a disputed issue of fact. How can a district court enter summary judgment in a case in which the Court of Appeals has already determined there's a disputed issue of fact? Because we had discovery, your honor. We filed... It doesn't really matter. Your discovery may go to credibility. The appellate panel has already determined there's a disputed issue of fact. How can a district judge, in light of that holding, grant summary judgment? Now, luckily for you, she didn't. Because if she did, she would have committed error. But the government, your position today that it's a burden of persuasion is inconsistent with the notion you took below in filing a summary judgment motion, isn't it? I think, well, again, I think it was consistent with what we understood we were able to file after we had filed, after we had conducted discovery in the case. Maybe that was a misunderstanding, your honor. But our position back then was that we had conducted extensive discovery and basically the evidence that the petitioner had submitted in the case was simply undercut by any... But undercut is an issue of credibility. He submitted evidence, if believed, that would have established that he was born in the United States. The judge didn't believe that the evidence established that. But that was not an unreasonable inference from some of his evidence, was it? Correct, your honor. See, one of the reasons we've got this difficulty with the burden of production or burden of proof is that you took the position it was a burden of production below and the district judge used that language. I don't think that's what she did at trial, but that's why we're in this mess today. Yeah, and your honor, we were just trying to stay consistent with this court's... We were trying to be consistent with this court's holding in Rose. I think that's how we came to that position, your honor. Thank you. If the court has no further questions, we rest on the arguments made in our briefs. Other questions? No, I don't. Thank you. Thank you very much. Thank you. I will not hear a rebuttal from the petitioner. I thought you said we will not hear a rebuttal. No, no, no, no, no, we will, I'm sorry. Now. Now. Your honors, it's important to underscore the one lesson. There was a lot of divided opinions in Mondaca-Vega, but the core, the guiding principle was three standards on burden of proof are enough. And there are only three, preponderance, clear and convincing, and a beyond a reasonable doubt. And there's only one, if it's not enough, if it's not a burden of persuasion, it's a burden of production. And that's governed by rule 301. There's only one. I'm sorry. Why shouldn't we look at the result in district court like a jury verdict? Because they apply. Or a bench trial. Because they applied the wrong burden of proof. And so that's, we're not disputing the factual findings. We're saying that the logically, necessarily, and in fact, the court, we briefed this below, because I was looking at the law and I was like, this is weird. And I said, look, we have to figure out, is it a burden of production or a burden of persuasion? So your argument is that the district court improperly instructed itself? Correct. It said, for example, it said at the beginning, it has to assume all facts favorable to the petitioner, because it's only a burden of production. And then it went ahead. It said that on the summary judgment motion. It said that. It didn't say it on this. She made very specific findings of fact in which she found an absence of credibility on your side of the equation, correct? Correct. But previous, I don't have the. So that's not assuming all facts in the light most favorable to the petitioner. Correct. But she said, the order says that that's what she's going to do. And I can grab the citation, but it's yes, it's prior to that in the preamble, it says this is a burden of production. Yeah, and there is some confusion in the order, but I want to get back to Judge Hawkins's question. Let's look at this record as a whole. The judge made a finding that Jesus was not born in the United States. Is there a clear error in that finding? As if she made the finding on a preponderant, you know, as a, if she determined that we did not meet our burden of persuasion on that point, then that's the way that, that's the way that, right, there's, that's it. Okay, so you just really, your whole argument turns on this burden of production versus persuasion. Correct, and to the government's point about this issue, I mean, it's been addressed. Well, first of all, I'd just like to point out, we also, where does the substantial credible evidence come from? I traced that in the brief. It doesn't come from Chao, and it doesn't come from the other footnote in the other, the Ayala Villanueva. If you trace it back, it comes back to some Chinese exclusion cases, and we cite them in our brief, Chen Hui and Lu Shi, and those, that's the origin of substantial credible evidence, and the quote in, if you read those two cases, and I've cited in the brief, what they're saying is, it's a rebuttable presumption that's burst upon production of sufficient evidence to survive directed verdict, so are we, and those are, sorry, that's a Ninth Circuit case and a Sixth Circuit case, Ninth Circuit case from 1925. Your time is up, let me ask my colleagues, does either have additional questions? We don't. We thank both counsel for your arguments. The case just argued is submitted. Well done. Thank you.
judges: Hawkins, M. Smith, Hurwitz